UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GREG PARK, ) | |
| *Plaintiff*, ) | |
| ) | |
| *vs.* ) | 1:13-cv-01862-JMS-MJD |
| ) | |
| CITY OF CARMEL, ) | |
| *Defendant.* ) | |

# ORDER

Plaintiff Greg Park brought the instant suit against Defendant City of Carmel, Indiana ("Carmel"), alleging that Carmel violated his rights under Title VII of the Civil Rights Act ("Title VII"). Mr. Park was previously employed by Carmel as a Police Officer, but Carmel terminated his employment. Mr. Park sued Carmel in a separate lawsuit, alleging that his termination was the result of unlawful race discrimination. During the pendency of that suit, Mr. Park applied to work as a Court Security Office at the Federal Courthouse in Indianapolis. As part of the background check for employment as a Court Security Officer, the United State Marshal Service requested information from Carmel regarding Mr. Park's previous employment as a Carmel Police Officer. In the instant suit, Mr. Park alleges that Carmel illegally retaliated against him for suing it for racial discrimination by intentionally delaying its response to the United State Marshal Service's request for information. Presently pending before the Court is Carmel's Motion for Summary Judgment. [Filing No. 32.] For the reasons explained below, Carmel's Motion for Summary Judgment is **GRANTED**.

## I.
### STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment

as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable factfinder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and

draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II.
### EVIDENTIARY OBJECTIONS & FACTUAL BACKGROUND

**A.    Evidentiary Objections**

Carmel objects to three categories of evidence from Mr. Park's declaration. One of these categories—evidence that Mr. Park was going to be hired as a CSO—is irrelevant to the Court's analysis and ultimate decision and therefore need not be ruled upon. The Court sustains Carmel's other two objections on the grounds that they constitute inadmissible hearsay.

Hearsay is "a statement that . . . a party offers in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c)(2). "And hearsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial, except that affidavits and depositions, which (especially affidavits) are not generally admissible at trial, are admissible in summary judgment proceedings to establish the truth of what is attested or deposed, provided, of course, that the affiant's or deponent's testimony would be admissible if he were testifying live." *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997); *see MMG Fin. Corp. v. Midwest Amusements Parks,*

*LLC*, 630 F.3d 651, 656 (7th Cir. 2011) ("A party may not rely on inadmissible hearsay to avoid summary judgment.").

First, Carmel argues that Mr. Park's statements reciting Judicial Security Inspector Robert Jackson's ("JSI Jackson") statements to Mr. Park in a phone conversation on August 7 or 8, 2012 are hearsay. [Filing No. 41 at 3.] In his declaration, Mr. Park relays several comments JSI Jackson made to him regarding JSI Jackson's communications with Carmel. Mr. Park relies on these statements as evidence of how Carmel was handling JSI Jackson's request for Mr. Park's personnel file—that is, to prove the truth of the matter asserted. [Filing No. 40 at 23-24.] Accordingly, this evidence constitutes inadmissible hearsay. *See* Fed. R. Evid. 801(c)(2). Carmel's objection to this evidence is **SUSTAINED**, and the Court will not consider this evidence in ruling on Carmel's Motion for Summary Judgment.

Second, Carmel objects to Mr. Park's statements regarding conversations Indianapolis Metropolitan Police Officer Bill Miller had with Carmel police officers as part of a background investigation. [Filing No. 41 at 3.] Mr. Park attests in his declaration that Officer Miller told Mr. Park that Officer Miller spoke with police officers from Carmel regarding Mr. Park's employment as a Carmel Police Officer. [Filing No. 39-1 at 7.] Again, Mr. Park relies on Officer Miller's out-of-court statements to prove the content of his communications with the police officers from Carmel, making these statement hearsay. *See* Fed. R. Evid. 801(c)(2). Carmel's objection to this evidence is **SUSTAINED**, and the Court will not consider this evidence in ruling on Carmel's Motion for Summary Judgment.

### B. Factual Background

Mr. Park worked as a Police Officer for Carmel from January 2008 to February 2011, when Carmel terminated his employment. [Filing No. 32-1 at 3.] In December 2011, Mr. Park sued

Carmel and Carmel's Chief of Police, Timothy Green, alleging among other things that his termination was the result of racial discrimination in violation of Title VII (the "Termination Suit"). *See Park v. City of Carmel*, No. 1:11-cv-1701-TWP-MJD (S.D. Ind. 2011), Dkt. 1.

In early March 2012, while the Termination Suit was ongoing, Mr. Park applied for a position as a Court Security Office ("CSO") for the federal courts in the Southern District of Indiana. [Filing No. 39-1 at 2.] Mr. Park interviewed for the CSO position with Akal Security, Inc. ("Akal"), which contracts with the United State Marshal Service ("USMS") to provide CSOs for the federal courthouse. [Filing No. 39-1 at 2.] Although the open CSO position was filled by another candidate shortly after Mr. Park applied, Akal contacted Mr. Park in June 2012 to see if he was still interested in the CSO position. [Filing No. 39-1 at 2-3.] Mr. Park replied that he was still interested, and he filled out several additional application forms and traveled to the federal courthouse for another interview. [Filing No. 32-2; Filing No. 39-1 at 3.]

As part of the CSO application process, JSI Jackson from the USMS was assigned to conduct a background investigation on Mr. Park on July 24, 2012. [Filing No. 32-8 at 3-4.] The deadline for JSI Jackson to complete the background investigation was August 14, 2012. [Filing No. 39-15 at 8.] JSI Jackson completed the interview portion of the background check with Mr. Park on July 31, 2012. [Filing No. 32-8 at 6-7.] Around this time, JSI Jackson also began contacting Mr. Park's previous employers, including Carmel. [Filing No. 32-8 at 8.]

JSI Jackson stopped by the Carmel Police Department while in the area and left his card for the Carmel Chief of Police, Chief Green. [Filing No. 39-15 at 13.] Shortly thereafter, JSI Jackson and Chief Green spoke on the phone, and JSI Jackson informed Chief Green that he was conducting a background investigation on Mr. Park. [Filing No. 39-15 at 13.] Both Chief Green

and JSI Jackson acknowledged the ongoing Termination Suit between Carmel and Mr. Park, therefore, Officer Green told JSI Jackson that if he needed anything regarding Mr. Park it would have to go through Carmel's city attorneys. [Filing No. 39-15 at 13.] Chief Green stated to JSI Jackson that if JSI Jackson sent Chief Green a formal request to review Mr. Park's personnel file, Chief Green would forward that request to the city attorneys. [Filing No. 39-15 at 13; Filing No. 39-19 at 9-10.]

JSI Jackson emailed Chief Green on August 2, 2012, officially requesting to review Mr. Park's personnel file. [Filing No. 32-10.] JSI Jackson did not state that he needed this information by a certain date or that his deadline for completing the background investigation was August 14, 2012. [Filing No. 32-8 at 10; Filing No. 32-8 at 13; Filing No. 32-10; Filing No. 32-12 at 2.] That same day, August 2, 2012, Chief Green forwarded JSI Jackson's email to Carmel City Attorney Douglas Haney, stating: "I have received the below request from the US Marshalls [sic] Office to review Terminated Officer Park's personnel file regarding a job application. Since there is current litigation (Law Suit) pending I would request your recommendation before we proceed." [Filing No. 32-16 at 1.] This was consistent with Mr. Haney's directive in place at the time to all Carmel departments that, "whenever employees or former employees have made a legal claim against the City, [the departments] should not respond to inquiries about such persons while their claim is outstanding or still subject to review or appeal, but should instead refer all such inquiries to [him] as the City's chief legal officer." [Filing No. 32-13 at 2.] Mr. Haney did not discuss JSI Jackson's request with anyone; instead, he considered it to be a request for public records subject to Indiana's Access to Public Records Act ("APRA"), and "put it on [his] stack of things to do." [Filing No. 39-24 at 5; *see* Filing No. 32-13 at 2.]

On August 8, 2012, Mr. Park's attorney in the Termination Suit, Kimberly Jeselskis, sent the attorney representing Carmel in the Termination Suit, John Roy, an email asking him to look into JSI Jackson's request to review Mr. Park's personnel file because JSI Jackson had not yet received it. [Filing No. 32-17 at 2.] Mr. Roy forwarded the email to Mr. Haney, asking how Mr. Haney would like him to respond. [Filing No. 32-17 at 1.] Mr. Haney responded to Mr. Roy: "Let me respond to the public records request. Do you have a complete personnel file that I can use? I will only give Park what the law requires. Also, I need the records request form(s) that were served on the City." [Filing No. 32-17 at 1.] Mr. Roy forwarded Mr. Haney the records request JSI Jackson sent to Carmel, and told Mr. Haney that he did not have Mr. Park's complete personnel file yet. [Filing No. 32-17 at 1.]

That same day, August 8, 2012, Mr. Haney received news that his father was terminally ill and likely had only a few weeks to live. [Filing No. 32-13 at 4.] This caused Mr. Haney to travel out of the state to visit and assist his father on August 9-12, August 23-26, and August 31-September 2, 2012. [Filing No. 32-13 at 4.] He was also out of town on a pre-paid vacation from August 14-19, 2012. [Filing No. 32-13 at 4.] Mr. Haney did not take any action regarding the public records request from August 8 until, as discussed further below, August 22. [Filing No. 39-24 at 6.]

In the meantime, JSI Jackson submitted his background investigation on Mr. Park to his supervisor on August 12 or 13, 2012. [Filing No. 32-8 at 10.] He did so having had no further communication with Carmel regarding his request for Mr. Park's personnel file. [Filing No. 32-8 at 10.] JSI Jackson wrote the following in the background check regarding Mr. Park's employment as a Carmel Police Officer: "A formal request was made via e-mail to Chief Green to review PARK's personnel file which was forwarded to the City of Carmel's attorneys. There has been no

response from Carmel regarding the request." [Filing No. 39-17 at 34.] JSI Jackson's background investigation was then forwarded by his supervisor to the Chief of the Office of Court Security in Washington, D.C. [Filing No. 32-9 at 60.] The cover letter noted, "The Southern District o[f] Indiana has some reservations regarding CSO candidate PARK based on some of the findings in the background investigation particularly involving his firing from the Carmel Police Department. Because of the mixed information in CSO candidate PARK's background, the Southern District of Indiana will defer to [the Judicial Services Division] for final adjudication." [Filing No. 32-9 at 60.]

The Judicial Services Division adjudicator Donna Jackson prepared a Record of Suitability Determination for Mr. Park, which contained the follow recommendation: "Unsuitable. Misconduct in Employment is not mitigated because essential information was not provided. The investigator was unable to obtain 2 employment interviews, perform a record search and obtain information [from] his OPF from his previous employment with Carmel PD." [Filing No. 39-17 at 45.] This recommendation was approved on August 15, 2012. [Filing No. 39-17 at 46.] Mr. Park received a letter from Akal dated August 28, 2012, stating that the USMS informed Akal that Mr. Park "ha[s] been disqualified from the position of CSO due to background investigation resulting in unfavorable information." [Filing No 39-3 at 1.]

On August 22, 2012, Assistant Carmel City Attorney Ashley Ulbricht became aware of Ms. Jeselskis' inquiry regarding the status of JSI Jackson's record request. [Filing No. 39-27 at 3.] Ms. Ulbricht asked, among others, Mr. Haney and Chief Green whether anyone had received JSI Jackson's request, and Chief Green responded that he "sent this request to City Legal approximately 2 weeks ago via e-mail." [Filing No. 32-18 at 1-2.] Because Mr. Haney was soon leaving for Wisconsin to visit his father, he asked Ms. Ulbricht to respond to the record request even though

she rarely handled such matters. [Filing No. 32-13 at 4; Filing No. 32-14 at 2.] Ms. Ulbricht spoke to Chief Green, who said he would send her Mr. Park's personnel file. [Filing No. 32-12 at 3; Filing No. 32-14 at 2.] On August 29, 2012, Chief Green's administrative assistant emailed Mr. Park's personnel file to Ms. Ulbricht. [Filing No. 39-22; Filing No. 39-23.] Mr. Haney told Ms. Ulbricht to take care of it "as soon as we can." [Filing No. 32-13 at 5; Filing No. 32-20 at 1.]

Ms. Ulbricht spent several hours on August 29, 30, and 31 redacting information from Mr. Park's personnel file that she considered privileged under Indiana public records laws. [Filing No. 32-14 at 3.] She then mailed the redacted records—which were 176 pages—to JSI Jackson on August 31, 2012. [Filing No. 32-14 at 3; Filing No. 32-11 at 1.] JSI Jackson received the documents on September 4, 2012, but returned them unread to Carmel on September 7, 2012, because he had already submitted Mr. Park's background investigation. [Filing No. 32-8 at 12.]

In his deposition in this case, JSI Jackson acknowledged that Carmel did not respond to his request for Mr. Park's personnel records in a timely enough fashion so that they could be included in his background investigation. [Filing No. 39-15 at 19.] But, as stated above, he also acknowledged that he never communicated to Carmel that he was operating under a deadline, let alone what that deadline was. [Filing No. 32-8 at 10; Filing No. 32-8 at 13; Filing No. 32-10; Filing No. 32-12 at 2.]

### III.
### DISCUSSION

Mr. Park asserts one claim against Carmel, namely, a Title VII retaliation claim.[1] Mr. Park maintains that Carmel effectively "refus[ed] to provide a job reference" in retaliation for filing the

---

[1] The parties recognize that Title VII's anti-retaliation provision "extends to materially adverse nonemployment-related discriminatory actions," such as the response to inquiries from prospective employers at issue in this case. *Szymanski v. Cnty. of Cook*, 468 F.3d 1027, 1029 (7th Cir. 2006).

Termination Suit. [Filing No. 40 at 19.] More specifically, Mr. Park challenges Carmel's handling of JSI Jackson's request for Mr. Park's personnel file, and contends that Carmel's conduct following that request was driven by a desire to retaliate against him for filing the Termination Suit.

To prove his retaliation claim, Mr. Park must "demonstrate that 'the desire to retaliate was the but-for cause of the challenged employment action.'" *Ripberger v. Corizon, Inc.*, 773 F.3d 871, 881 (7th Cir. 2014) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013)). This requires, among other things, Mr. Park to "produce evidence that a retaliatory motive *actually* influenced the decision-maker, not merely that it *could* have." *Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1108 (7th Cir. 2012). "The logic is that an employee would be less likely to engage in statutorily protected activity—like suing for discrimination—if the employer could exact some sort of revenge outside of the workplace or when the employee changed jobs." *Matthews v. Wis. Energy Corp.*, 534 F.3d 547, 558 (7th Cir. 2008).

"A plaintiff can establish retaliation using a direct or indirect method of proof." *Northington v. H&M Int'l*, 712 F.3d 1062, 1065 (7th Cir. 2013). Mr. Park focuses on the direct method. [Filing No. 40 at 18.] The direct method requires him to adduce evidence that he "(1) engaged in statutorily protected activity; (2) [] suffered an adverse employment action taken by the employer; and (3) there was a causal connection between the two." *Northington*, 712 F.3d at 1065. Carmel does not dispute that Mr. Park's Termination Suit against it constitutes a statutorily protected activity. [Filing No. 33 at 14.] The parties dispute most other aspects of Mr. Park's claim. The Court finds it most prudent to address an issue running throughout the parties' briefing: whether Mr. Park can establish that Carmel acted with a retaliatory motive.

Carmel argues that there is no evidence that its compliance with JSI Jackson's request for Mr. Park's personnel file twenty-nine days after the request was made was retaliatory. [Filing No.

33 at 16.] First and foremost, Carmel points out that the undisputed evidence is that it was unaware of JSI Jackson's August 14, 2012 deadline to complete Mr. Park's background investigation, and therefore it could not have intended to thwart that deadline by not completing the request until August 31, 2012. [Filing No. 33 at 17.] Moreover, Carmel argues that the chronology of events from when JSI Jackson submitted the request to when the relevant documents were sent to him does not permit an inference of retaliatory animus. [Filing No. 33 at 17-19.]

Mr. Park responds that Carmel effectively "refus[ed] to provide a job reference" in retaliation for his filing of the Termination Suit against it. [Filing No. 40 at 19.] Specifically, Mr. Park maintains that his evidence "shows that [Mr.] Haney had no intention of ever responding to the so-called public record request," and that Carmel's failure to respond precluded him from obtaining the CSO position.[2] [Filing No. 40 at 21.]

Carmel replies that Mr. Park has failed to show that any of Carmel's actions were done with retaliatory intent. [Filing No. 41 at 7.] Specifically, Carmel points out that Mr. Park's best evidence of retaliatory intent is inadmissible hearsay, leaving him only with evidence that Carmel did not respond to JSI Jackson's request in time for him to comply with a deadline of which Carmel was unaware. [Filing No. 41 at 8-9.]

---

[2] The Court's review of Mr. Park's brief was made unnecessarily cumbersome due to his failure to comply with Local Rule 56-1(e), which provides: "A party must support *each fact* the party asserts in a brief with a citation to a discovery response, a deposition, an affidavit, or other admissible evidence." Local Rule 56-1(e) (emphasis added). Despite the clear language of this rule—which requires every factual assertion in a brief to be accompanied by a citation to record evidence—Mr. Park cites to the relevant evidence in his factual background section, but rarely, if ever, cites evidence supporting the factual assertions in the argument section of his brief. This is in clear violation of Local Rule 56-1(e), and it would be well within the Court's discretion to disregard all factual assertions not accompanied by the required citation. *See Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994) (noting that the Seventh Circuit has "repeatedly upheld the strict enforcement of [the local] rules"). Although the Court does not choose this course here, Mr. Park is cautioned that compliance with the Local Rules is mandatory, and there can be serious consequences for non-compliance. *See id*.

Based on the admissible evidence presented, no reasonable jury could conclude that Carmel acted with retaliatory animus in handling JSI Jackson's request to review Mr. Park's personnel file. At bottom, the reason for this is simple: the undisputed evidence reveals that Carmel was unaware that JSI Jackson was operating under a deadline to complete Mr. Park's background investigation, let alone what that deadline was. [Filing No. 32-8 at 10; Filing No. 32-8 at 13; Filing No. 32-10; Filing No. 32-12 at 2.] Given this, no reasonable jury could conclude that Carmel's turn-around time of twenty-nine days to respond to JSI Jackson's request was motivated by a desire to retaliate against Mr. Park. Indeed, a close look at Carmel's specific conduct during the pendency of JSI Jackson's request undermines any notion that Carmel acted with retaliatory animus.

JSI Jackson's official request to review Mr. Park's personnel file was emailed to Chief Green on August 2, 2012. [Filing No. 32-10.] Critically, JSI Jackson never communicated to anyone affiliated with Carmel that he was operating under a deadline. [Filing No. 32-8 at 10; Filing No. 32-8 at 13; Filing No. 32-10; Filing No. 32-12 at 2.] Pursuant to Mr. Haney's directive, as Carmel's chief legal officer, that all inquiries involving individuals who are engaged in litigation with Carmel be forwarded to him, [Filing No. 32-13 at 2], Chief Green forwarded the request to Mr. Haney, [Filing No. 32-16 at 1]. Mr. Haney decided that this request should be treated as a request for public records pursuant to the APRA, and "put it on [his] stack of things to do." [Filing No. 39-24 at 5; *see* Filing No. 32-13 at 2.] Such conduct does not permit an inference of retaliatory animus, especially considering that those actions were in conformity with the operative policy for handling requests from individuals with whom Carmel is engaged in litigation.

Six days later, on August 8, Mr. Haney received an email from Mr. Roy inquiring as to the status of JSI Jackson's request. [Filing No. 32-17 at 1-2.] Mr. Haney responded that same day, saying that he would give JSI Jackson what the APRA requires and asking whether he had Mr.

Park's complete personnel file, but Mr. Roy did not at that time. [Filing No. 32-17 at 1.] During the next twenty-four days—from August 8 through August 31 (the day Carmel sent JSI Jackson Mr. Park's personnel file)—Mr. Haney was out of town on vacation or visiting his terminally ill father for fourteen of those days. [Filing No. 32-13 at 4.] In fact, Mr. Haney was visiting his father from August 9-12, [Filing No. 32-13 at 4], and unbeknownst to him or anyone else at Carmel, JSI Jackson submitted Mr. Park's background investigation to his supervisor on August 12 or 13. [Filing No. 32-8 at 10.] Thus, at the time JSI Jackson submitted Mr. Park's background investigation, there is no evidence suggesting that Carmel intentionally delayed responding to the request for retaliatory reasons. Quite the opposite is true: a few days before the investigation was submitted, Mr. Haney stated he would give JSI Jackson what was required and asked whether Mr. Park's full personnel file was available. [Filing No. 32-17 at 1.]

Carmel's conduct after JSI Jackson submitted the background investigation reinforces this conclusion because Carmel continued to respond to JSI Jackson's request. On August 22, 2012, Ms. Ulbricht became aware of JSI Jackson's request and asked Mr. Haney about its status. [Filing No. 32-18 at 1-2; Filing No. 39-27 at 3.] Mr. Haney was again leaving for Wisconsin to be with his ailing father, so he asked Mr. Ulbricht to handle the request "as soon as we can." [Filing No. 32-13 at 4-5; Filing No. 32-14 at 2; Filing No. 32-20 at 1.] That same day, Mr. Ulbricht spoke with Chief Green, who said he would send her Mr. Park's full personnel file. [Filing No. 32-12 at 3; Filing No. 32-14 at 2.] Ms. Ulbricht received Mr. Park's personnel file on August 29, [Filing No. 39-22; Filing No. 39-23], spent several hours on August 29, 30, and 31 redacting the information considered privileged under Indiana law, [Filing No. 32-14 at 3], and mailed the 176-page file to JSI Jackson on August 31, [Filing No. 32-11 at 1; Filing No. 32-14 at 3.] Again, Carmel sent this response to JSI Jackson believing that it had fully and timely complied with his request;

Carmel had no idea that the background investigation was already complete. [Filing No. 32-8 at 10; Filing No. 32-8 at 13; Filing No. 32-10; Filing No. 32-12 at 2.]

Mr. Haney's reliance on his understanding of the APRA further demonstrates Carmel's lack of retaliatory intent. The APRA requires a public agency to respond to a public records request within a "reasonable time after the request is received." Ind. Code § 5-14-3-3(b). Indiana law does not make clear what amount of time is "reasonable," and the Court need not do so here. For the purpose of this case, what is important is that the undisputed evidence shows that Mr. Haney considers thirty days to be a reasonable amount of time since "court rules usually provide a responding party thirty (30) days to respond to a request for production of documents," and it gives him sufficient times to collect and review the necessary documents and "prepare a written response . . . in the ordinary course of business." [Filing No. 32-13 at 3.] Indeed, Mr. Haney attempts to respond to the "approximately 450 record requests that [he] receive[s] each year within thirty (30) days of their receipt."[3] [Filing No. 32-13 at 3.] Therefore, not only is there no evidence that Carmel intentionally delayed responding to JSI Jackson's request for retaliatory reasons, but the undisputed evidence shows that Mr. Haney followed his understanding of Indiana law in handling JSI Jackson's public records request.

The above evidence demonstrates that Mr. Park is simply incorrect in asserting that "record evidence shows that Haney had no intention of ever responding to the so-called public record

---

[3] Mr. Park argues that Indiana law deems his public records request denied if not responded to within seven days. [Filing No. 40 at 21 (citing Ind. Code § 5-14-3-4.4; Ind. Code § 5-14-3-9).] First, the sections on which Mr. Park relies relate to appellate rights and attorney's fees, making § 5-14-3-3(b) the more relevant statute for determining when Carmel was required to respond to the public records request. Second, even if Mr. Park was correct, compliance with Indiana law is not at issue in this case; what is important for assessing when there was retaliatory animus is that the undisputed evidence shows that Mr. Haney believed his practice of responding in thirty days to be compliant with the law, and he followed that practice.

request." [Filing No. 40 at 21; Filing No. 40 at 24.]  First and foremost, it is patently false to say that Mr. Haney had "no intention of ever responding" when Mr. Haney explicitly directed Ms. Ulbricht to respond to the request "as soon as we can," and she did so.  [Filing No. 32-11 at 1; Filing No. 32-14 at 3; Filing No. 32-20.]

Second, the evidence on which Mr. Park relies to support his argument is unpersuasive.  Mr. Park asserts that Mr. Haney "never did anything" to respond to JSI Jackson's request.  [Filing No. 40 at 21; Filing No. 40 at 24-25.]  Again, the above evidence demonstrates that this is simply untrue:  Mr. Haney directed Ms. Ulbricht to respond to the request.  [Filing No. 32-13 at 5.]  To the extent that Mr. Park is arguing that because Mr. Haney did not drop everything and immediately respond to JSI Jackson's request, a jury could not infer retaliatory animus from this fact, especially given that he did not know of JSI Jackson's deadline.  Any argument that Mr. Haney did not move through his stack of work or jump straight to JSI Jackson's request to intentionally delay responding to the request is mere speculation, which does not assist Mr. Park in avoiding summary judgment.  *See Brown*, 700 F.3d at 1108 ("[O]ur favor toward the nonmoving party on summary judgment does not extend to drawing inferences that are supported by only speculation or conjecture."); *cf. Ripberger*, 773 F.3d at 881 ("Circumstantial evidence must point directly to a discriminatory reason for the employer's action.") (citation and quotation marks omitted).

In further support of his argument, Mr. Park also alleges that the evidence shows that Mr. Haney "responds to public record requests within one (1) business day."  [Filing No. 40 at 21 (citing Filing No. 39-8).]  But the evidence he cites shows that several individuals unrelated to this case who submitted public records request forms with Carmel received a form response letter from Mr. Haney, often, but not always, the next business day, which stated that he would review their

request "in conformance with Indiana law." [Filing No. 39-8.] Thus, contrary to Mr. Park's suggestion, there is no evidence that Carmel substantively responded to these record requests in one day; indeed, Mr. Park does not point to any evidence regarding how long it typically took Carmel to substantively respond to these requests, and thus no inference can be drawn one way or another by comparing the time that Carmel spent responded to JSI Jackson's request and the time spent responding to others. If anything, as discussed above, the evidence shows that Mr. Haney followed his view of Indiana law in responding to Mr. Park's request within thirty days, [Filing No. 32-13 at 3], which is in accordance with how the cited letters stated other individuals' public records requests would be handled, [Filing No. 39-8]. For these reasons, none of the evidence on which Mr. Park relies would allow a reasonable jury to infer that Carmel acted with retaliatory intent when responding to JSI Jackson's request to review Mr. Park's personnel file.

In conclusion, to succeed on his Title VII retaliation claim, Mr. Park must "produce evidence that a retaliatory motive *actually* influenced the decision-maker, not merely that it *could* have." *Brown*, 700 F.3d at 1108. He has produced no such evidence. Given that Carmel and Mr. Park were involved in litigation against one another, Carmel treated JSI Jackson's request to review Mr. Park's personnel file as a public records request and, twenty-nine days after the request, sent JSI Jackson a redacted version of Mr. Park's personnel file on August 31, 2012. The problem with Carmel's conduct from Mr. Park's perspective is that, due to an August 14, 2012 deadline, JSI Jackson had already submitted Mr. Park's background investigation. But the problem for Mr. Park's Title VII retaliation claim is that there is no evidence that Carmel was aware of the deadline. This fact, along with the evidence that Carmel complied with JSI Jackson's request in the normal course of business, forecloses a reasonable jury from concluding that Carmel's handling of JSI

Jackson's request was motivated by retaliatory animus toward Mr. Park's Termination Suit. Accordingly, Carmel is entitled to summary judgment on Mr. Park's Title VII retaliation claim. *See id.* (granting summary judgment to the defendant on the plaintiffs' Title VII retaliation claim because the plaintiffs failed to provide "evidence to show that [the defendants] were motivated by a retaliatory animus").

### IV.
#### CONCLUSION

For the reasons explained, Carmel's Motion for Summary Judgment is **GRANTED**. [Filing No. 32.] Final Judgment shall issue accordingly.

March 24, 2015

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**